CommonWealth *vs.* Oliver Brown.

On the trial of an indictment, which alleged that the defendant erected and main tained a building for the purpose of manufacturing neat's-foot oil therein, and boiled and tried putrid meats, &c. therein, by means whereof noisome and offensive smells issued from the building, to the common nuisance of the citizens, it appeared in evidence that noisome and offensive smells issued from other parts of the defendant's premises, near the said building, by reason of the use made

31 *

near thereto, but not therein, of the materials boiled and tried in the building. *Held,* that the jury, in deciding whether the defendant was guilty of the offence charged in the indicment, could not take into account any offensive smells that did not issue from the building.

THE indictment in this case alleged, that the defendant, on the 1st of January 1845, at Charlestown, " near to a publi-street and common highway there, and also near to the dwelling houses of divers citizens there situate and being, did unlawfully erect, build and maintain a certain building, for the purpose of making and manufacturing neat's-foot oil therein, and did unlawfully and injuriously make and set up, place and maintain, in the said building, divers furnaces, stoves, caldrons, coppers and boilers, to wit, five furnaces, five stoves, five caldrons, five coppers, and five boilers, for the purpose of boiling and trying putrid meat, bones, heads, feet and other materials used in the manufacture of neat's-foot oil; and that he, on the day and year aforesaid, and on divers other days and times," &c. " unlawfully and injuriously did boil, try and mix together divers large quantities of putrid meat, bones, cattle's heads, and cattle's feet, and other materials used in the making and manufacturing of neat's-foot oil, for the purpose of making and manufacturing the same into neat's-foot oil; by reason of which said premises, divers noisome and unwholesome smokes, vapors, smells and stenches, on the days and times aforesaid, were emitted and issued from the said building, so that the air, on the several days and times aforesaid, at Charlestown aforesaid, was thereby greatly filled and impregnated," &c. " and was rendered, and became and was corrupted, offensive and unwholesome; to the great damage and common nuisance," &c.

At the trial in the court of common pleas, before *Cushing,* J. it appeared that the defendant was the owner of a lot of land, in Charlestown, extending from Main Street to tide water in Miller's River; that his dwelling-house stood on the end of the lot next to the street, and that at the other end of the lot, he had a building, two stories high, built about fifteen years before the trial, standing 200 feet or more from said

street, in which building he had for many years carried on the business of making neat's-foot oil, by boiling cattle's heads, feet, &c. And there was evidence tending to prove that the process of boiling produced very noisome and offensive smells. It was also in evidence, that the defendant kept hogs in a yard at the west end and south side of his oil works, and that the bones and other materials used in making the oil, after being boiled and the oil taken off, were thrown into the hog yard, and that, after the hogs had eaten off the fleshy parts, the bones were thrown into a separate enclosure, where they were stirred up, from time to time, in order that they might be washed by the tide water; that the bones were carted away from this enclosure, at different times, as purchasers wanted them. And there was evidence tending to show that the emptying of the kettles, the stirring up and the carting away of the bones, produced an intolerable stench.

On this evidence, the defendant contended that, as it was alleged in the indictment, that the stenches, which caused the supposed nuisance, were emitted and issued from the defendant's building, the jury must confine themselves to the consideration of the smells proved to have issued and been emitted from the building, and could not take into account, in finding their verdict, any stenches arising from other parts of the defendant's premises. And the defendant requested the court so to instruct the jury. But the court declined to give such instruction, and instructed the jury that, in deciding the question of the defendant's guilt, they might take into account, not only such smells as were proved to have issued from his building, but also the smells and stenches arising from any part of his premises occupied for the purpose of making neat's-foot oil. The jury returned a verdict against the defendant, and he alleged exceptions to the said instructions.

*Buttrick,* for the defendant.

*Nelson,* (District Attorney,) for the Commonwealth.

SHAW, C. J. The defendant contended, at the trial, that the jury, under this indictment, must be confined to the smells

emitted from the building, and could not consider those proceeding from other causes. But the court refused so to instruct the jury, but instructed them, that in deciding the question of the defendant's guilt, they might take into account not only such smells as issued from his building, but also the smells and stenches arising from any part of his premises occupied for the purpose of making neat's-foot oil.

It appears to the court, that this direction was too broad, and permitted the defendant to be found guilty of a nuisance not charged in the indictment. Without going back to the critical niceties, which have sometimes been resorted to, in considering the sufficiency of an indictment, it is a great and salutary principle of the common law, sanctioned and enforced by our declaration of rights, art. 12, that the crime or offence, to which a man is called to answer, shall be "fully and plainly, substantially and formally described" in the indictment. It is to that alone he answers ; that alone is within the issue, and is the subject of proof.

In applying these rules, it appears to us, that the nuisance, arising from the hog yard and heaps of bones, was not charged in the indictment, was not traversed by the plea, and of course not in issue, and could not be taken into consideration, in deciding the question, whether the defendant was guilty on that indictment.

*Verdict set aside, and a new trial granted.*